## In re Anonymous Nos. 66 D.B. 93 and 97 D.B. 95

Disciplinary Board Docket no. 66 D.B. 93 and 97 D.B. 95.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MORRIS, *Member,* March 15, 1999—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petitions for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, [    ], filed petitions for reinstatement from suspension in cases no. 66 D.B. 1993 and no. 97 D.B. 1995 on June 11, 1998. These petitions were consolidated for the instant reinstatement hearing. Petitioner was suspended for a period of two years in the matter of 66 D.B. 1993 by order of the Supreme Court issued March 28, 1996. In the matter of 97 D.B. 1995, petitioner was

suspended by order of the Supreme Court issued May 5, 1998 for a one-year period to run concurrent with the suspension in no. 66 D.B. 1993.

A reinstatement hearing was held on September 28, 1998 before Hearing Committee [    ] comprised of Chair [    ], Esquire, and Members [    ], Esquire, and [    ], Esquire. Petitioner was represented by [    ], Esquire. Office of Disciplinary Counsel was represented by [    ], Esquire.

The Hearing Committee filed a report on November 20, 1998 and recommended that the petitions for reinstatement be granted.

No briefs on exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of January 13, 1999.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born in 1938 and was admitted to practice law in Pennsylvania in 1965. His current home address is [    ].

(2) Petitioner was suspended from the practice of law for a period of two years on March 28, 1996, in the matter of no. 66 D.B. 1993. This suspension resulted from a determination that petitioner commingled and converted funds from the [A] estate during the time frame of 1991 to 1993.

(3) During the investigation of the charges in no. 66 D.B. 1993, petitioner was asked to turn over certain banking records to Office of Disciplinary Counsel. Office of Disciplinary Counsel formulated a set of charges based

on the analysis of these records and filed them in a separate case at no. 97 D.B. 1995.

(4) Petitioner was suspended from the practice of law for a period of one year on May 5, 1998, in the matter of no. 97 D.B. 1995. This suspension was ordered to run concurrent with the two-year suspension in no. 66 D.B. 1993. The one-year suspension resulted from a determination that petitioner commingled and converted funds belonging to seven other clients between 1991 and 1993.

(5) Petitioner presented expert evidence at both disciplinary hearings, linking his misconduct to his abuse of alcohol.

(6) At the time of the disciplinary hearing held in the autumn of 1994 on no. 66 D.B. 1993, petitioner was still drinking alcohol, despite the fact that his alcohol abuse substantially caused his misconduct. At that time, petitioner believed that he could control his problems by regulating the type and amount of alcohol he drank.

(7) On February 1, 1996, petitioner drank excessively at a social function and experienced a blackout. He then realized that there was no middle ground for him and he needed help. Petitioner stopped drinking at this point.

(8) In April 1996, shortly after he received the two-year suspension order from the Supreme Court, he attended some Lawyers Concerned for Lawyers meetings and spoke to fellow attorneys regarding his problem.

(9) Petitioner asked Attorney [B] from [   ] to be his sponsor for Alcoholics Anonymous. [B] challenged petitioner to attend 90 AA meetings in 90 days.

(10) Petitioner did so and continued to attend over 300 meetings in the first 300 days of his alcohol recovery.

(11) Currently petitioner attends three or four meetings per week. His "home group" is a Sunday night meeting in [    ]. In addition, petitioner attends public meetings with his wife on Sunday mornings, a Tuesday night meeting in [    ] near his home, and occasionally a Thursday late afternoon meeting in [    ] with a lawyer's group.

(12) Petitioner has attended AA conferences and seminars in various places and serves as a sponsor for other members of AA.

(13) During his suspension, petitioner became involved as a volunteer counselor at [C] Hospital in [    ], where he previously served as legal counsel and continues today on the board of directors. Petitioner counsels in the hospital's detox and behavioral health unit, where he works with patients who have alcohol problems.

(14) Petitioner was appointed in June 1998 as chairman of a major beautification project in [    ] County. Petitioner is also involved in Habitat for Humanity of [    ] County, which builds homes for impoverished families.

(15) While suspended, petitioner maintained a title insurance agency under the name of [D], and he served on the board of a cemetery.

(16) Petitioner has been sober since February 1, 1996.

(17) Witnesses testified on behalf of petitioner as to his continuing sobriety. [B], Esquire, petitioner's sponsor, testified by deposition that petitioner has maintained attendance at meetings and has excellent relationships with his family members. He states that there is no evidence that petitioner has started drinking again.

(18) [E], petitioner's wife, testified that he is a different person now that he is not drinking. She testified that

he is very conscientious about attending his various weekly meetings, and he understands how alcohol use can impact him if he does not stay sober.

(19) Attorney [F] testified that he first met petitioner in the [    ] lawyer's group. Attorney [F] testified that in his opinion, petitioner has maintained complete sobriety. He calls petitioner occasionally and sees him at the meetings and, from his observances, petitioner is not drinking.

(20) [G], petitioner's sponsor in [    ], testified that petitioner attends AA meetings very regularly and is making good progress with his alcoholism.

(21) Attorney [H] of [    ] testified by deposition that he has known petitioner for approximately 30 years. Petitioner's reputation in the community is very good, and his readmission to the practice of law would not be detrimental in any way to the community, according to Attorney [H].

(22) Petitioner testified that he knows he is an alcoholic, and he intends to continue attending AA meetings on a regular basis. He testified that he believes those people who have had relapses had them in part because they discontinued their attendance at meetings. Petitioner does not plan to let that happen.

(23) Petitioner plans to reopen his office in [    ] if he is reinstated and limit his cases to estate administration and small commercial matters.

(24) Petitioner attended continuing legal education courses and received a total of 55 credits. He also read the advance sheets and the *Pennsylvania Lawyer* to keep current on trends in the law.

(25) Petitioner expressed remorse for his misconduct.

### III. CONCLUSIONS OF LAW

Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency, and learning in the law necessary to practice in Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor subversive of the interests of the public.

### IV. DISCUSSION

An attorney who is suspended from the practice of law for a period exceeding one year may not resume practice until reinstated by order of the Supreme Court of Pennsylvania, pursuant to Pa.R.D.E. 218(a). In order for petitioner to gain reinstatement after suspension, he has the burden of demonstrating, by clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law required for admission to practice law. Part of petitioner's burden also requires that he demonstrate that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar nor subversive of the public interest. Pa.R.D.E. 218(c)(3)(I).

In determining whether petitioner clearly demonstrated his present fitness to practice law, the board considered the nature of petitioner's misconduct, his present competence and legal abilities, his character, rehabilitation and degree of remorse expressed. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

The petitions for reinstatement were filed by petitioner from two orders of suspension entered by the Supreme

Court of Pennsylvania at no. 66 D.B. 1993 and no. 97 D.B. 1995. The charges at no. 66 D.B. 1993 involved petitioner's admitted commingling and conversion of funds of an estate. In its report dated March 4, 1996, the board found that petitioner established, pursuant to *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989), that his misconduct was substantially caused by his abuse of alcohol. Petitioner received a two-year suspension.

During the investigation of the charges at no. 66 D.B. 1993, petitioner was requested to turn over his banking records to Office of Disciplinary Counsel. The charges at no. 97 D.B. 1995 were formulated based on investigation of these records. Petitioner was charged with commingling and conversion of funds of seven clients over a two-year period coinciding with the time period of the misconduct in no. 66 D.B. 1993. Expert testimony was presented that petitioner's alcoholism was a causal factor in his misconduct. As a result, petitioner was suspended for one year to run concurrently with the suspension in no. 66 D.B. 1993.

At the time of the first disciplinary hearing in the matter of no. 66 D.B. 1993, petitioner was still consuming alcohol, even though he knew that his alcohol problem caused his misconduct. Petitioner believed that he could regulate his alcohol intake and thus solve any problems he was having. Petitioner stopped drinking hard liquor, while continuing to drink wine and beer. Petitioner was convinced that his problems were over until February 1, 1996, when he drank excessively at a social occasion and experienced a blackout. Petitioner realized that he was unable to deal with this problem on his own and

sought help from other attorneys, who guided him to Lawyers Concerned for Lawyers. Since February 1, 1996, petitioner has been sober. He became involved in Alcoholics Anonymous and attended over 300 meetings in 300 days.

Currently petitioner attends three or four meetings per week, either in [   ] or the surrounding area. Petitioner acknowledges that he is an alcoholic and must avoid drinking for the rest of his life. He is aware of the steps he must take to avoid a relapse, such as continuing to regularly attend AA meetings and keeping in touch with his sponsors.

During petitioner's suspension from the practice of law, in addition to seeking treatment for his alcohol abuse, he continued his involvement in his community. He volunteered at [C] Hospital as a counselor in the behavioral health unit, and he served on the board of directors of the hospital. Petitioner undertook the chairmanship of a beautification project in [   ] County. Petitioner volunteered in Habitat for [   ] County, a group which helps build homes for impoverished families. Petitioner also maintained a title insurance company and served on the board of a local cemetery.

Petitioner kept current in the law by reading the advance sheets and the *Pennsylvania Lawyer.* He received 55 continuing legal education credits for seminars he attended.

Petitioner presented character witnesses who testified that he is maintaining sobriety and there is no evidence that he has had a relapse. These witnesses testified that petitioner is hard-working and conscientious and takes his sobriety very seriously. One witness, [H], Esquire,

testified that petitioner's reputation in the community is very good and his readmission to the bar will not be detrimental to the community. Petitioner himself testified to his remorse for his misconduct and his desire to return to the practice of law as a sober person. While he understands that the practice of law is filled with stress and pressure, he is confident that he possesses the resources to deal with these stresses in ways other than drinking alcohol.

Petitioner has provided clear and convincing evidence of his rehabilitative efforts, his competence and learning in the law, his remorse, and his moral qualifications. Petitioner's misconduct was serious and appropriately addressed by the Supreme Court with a two-year suspension and a one-year concurrent suspension. Petitioner completed his suspension without any difficulties or questionable activities.

For these reasons, the board recommends that these petitions for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [ ], be reinstated to the practice of law.

The board further recommends pursuant to Rule 218(e), Pa.R.D.E., that petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petitions for reinstatement.

Board Member Marroletti did not participate in the January 13, 1999 adjudication.

Board Member Miller did not participate in the consideration and disposition of this matter.

204

## ORDER

And now, May 20, 1999, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated March 15, 1999, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.